UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SIMMIE L. HILL**<br>    **LA. DOC #266756**<br>**VS.** | **CIVIL ACTION NO. 09-0811**<br><br>**SECTION P**<br><br>**CHIEF JUDGE JAMES** |
| **LYDIA SMITH, ET AL.** | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Simmie L. Hill, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 15, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Madison Parish Corrections Center (MPCC), Tallulah, Louisiana, and he complains of inadequate and delayed dental care, inadequate diet, general conditions of confinement, and inadequate access to legal materials. Plaintiff sues Madison Parish Sheriff Larry Cox, MPCC's Warden Jimmy Shivers, and Head Nurse Lydia Smith. He prays for compensatory damages for pain and suffering and injunctive relief (improvement of living conditions and a functional and adequate law library.)

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. 1]*

　　*a. Medical Care*

According to his original complaint, plaintiff was arrested and detained at the Madison Parish Jail on May 6, 2007. In June 2008 he requested dental treatment. He was provided Tylenol, Aleve, and Oragel for pain; however, he was unable to obtain an examination or treatment. On December 9, 2008, plaintiff was transferred to the Southern Correctional Center. One week later, or sometime in mid-December 2008 he was transferred to MPCC.

From the time of his arrival at MPCC he requested dental care and sometime in January 2009 he was examined and apparently treated by a dentist. According to plaintiff, Nurse Smith also provided Tylenol, Aleve, and Oragel[1] for his pain prior to the time of his dental appointment. Plaintiff was charged for these over-the-counter medications. He also complained of "very severe" pain approximately one-week before his dental appointment and complained that his request for emergency attention was ignored.

---

[1] Tylenol or acetaminophen is used to relieve mild to moderate pain from headaches, muscle aches, menstrual periods, colds and sore throats, toothaches, backaches, and reactions to vaccinations (shots), and to reduce fever. Acetaminophen may also be used to relieve the pain of osteoarthritis (arthritis caused by the breakdown of the lining of the joints). Acetaminophen is in a class of medications called analgesics (pain relievers) and antipyretics (fever reducers). It works by changing the way the body senses pain and by cooling the body. Aleve, or naproxen, is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Naproxen is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation.

Medline Plus, Drugs & Supplements, A Service of the U.S. National Library of Medicine and the National Institutes of Health, at http://www.nlm.nih.gov/medlineplus/druginformation.html

Orajel is a brand of topical benzocaine, a medicine used to reduce pain or discomfort. Drugs.com, at http://www.drugs.com/mtm/benzocaine-topical.html

### b. Diet

Upon his arrival at MPCC plaintiff was placed in the Medical Dorm, given "store restriction" and placed on a diet, even though he denies being a diabetic. According to plaintiff the diet "... is severely lacking in nutritional value..."

Plaintiff complains that "... the meals are planned, prepared, and served by inmates." He complains that he must dine standing or seated on his bed for lack of table space. He complains that he and the 80 or so inmates in the Medical Dorm are "... forced to eat in the same area that has open toilets, sinks, and showers, and urinals and barber area right by the microwave where you have to warm your food up because its cold when served ... most of the time."

### c. Conditions of Confinement

Plaintiff further complains that he is required "... to stay from under my bed covers from Mon-Fri 8:00 a.m. to 5:00 p.m. while the air conditioner is set in the upper 40's ..."

### d. Law Library

Plaintiff claims that he is engaged in unspecified "legal litigation and research concerning my case." He complains that the MPCC law library is inadequate and that he is being denied access to it except on Tuesdays between the hours of 8:00 a.m – 11:00 a.m. during which time he must share the facilities with 180 other inmates. He also complains that MPCC inmate counsel has no training or knowledge, that there are no books or material to lend assistance, and that there are no places to sit and read in the library.

## 2. Amended Complaint [Doc. 9]

Plaintiff was instructed on the law and directed to amend his complaint to provide more

specific information. [Doc. 8]² On September 30, 2009, he amended his complaint. However, he failed to address the issues as instructed and, as is shown below, provided merely a restatement of his original complaint:

### *a. Medical Care*

Plaintiff was arrested and incarcerated in the Madison Parish Jail on May 6, 2007. More than one year later – in June 2008 – he complained of a tooth ache and was given Tylenol, Aleve, and Orajel for pain. Plaintiff continued to take over the counter medication for pain for the next 7 months. Plaintiff requested a dental examination and on each occasion was assured that he "was on the list to see a dentist"; however, an inmate who arrived in jail after the plaintiff was allowed to be examined and treated by a dentist. On December 8, 2008, plaintiff was sentenced. Throughout the period from June – December 8, 2008, plaintiff was required to rely on over the counter pain medication.

On December 9, 2008, plaintiff was transferred to SCC where he remained for one week or until December 16, 2008, when he was transferred to MPCC. Upon his arrival at MPCC plaintiff reminded Nurse Nolan about his tooth ache and she advised that he would be placed "on the list." Nevertheless, plaintiff "... was continuously provided pills for pain..." although on four occasions plaintiff was unable to obtain his medication from the medicine cart and was required to pay for a sick call.

---

² Among other things, plaintiff was instructed to provide: "(1) the name(s) of each person who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3) the place and date(s)that each event occurred; and (4) a description of the alleged injury sustained as a result of the alleged violation." He was further instructed to "describe in detail the harm or injury he sustained ..." and to "... state how EACH defendant is alleged to have violated his rights."

On January 9, 2009, plaintiff's emergency sick call was denied and he was advised by the Deputy, "... his orders from the nurse was that if any one in this medical dorm ask for any medicine not prescribed or on the cart was not to be given any." On January 11, 2009, plaintiff again requested medication but because that was a Sunday and because plaintiff's medication "was out" he was told to wait. Finally, on January 16, 2009, plaintiff was examined by a dentist and his tooth was extracted.

### b. Diet

Plaintiff has been confined to Unit Building 3, Dorm B at MPCC. For reasons not fully explained, he was placed on store restriction and prescribed a diabetic diet – featuring whole wheat rich in fiber. According to plaintiff, he is not diabetic and, since he previously had colon surgery and is taking medication to prevent frequent bowel movements, the whole wheat diet exacerbates the problem.

According to plaintiff, the food "... is lacking in nutritional value and quantity" and is planned, prepared, and served by untrained inmates. Plaintiff is not served fruits or sweets. Milk is not served with every meal and juice is never provided.

The food is always "cold" when served and plaintiff and others must eat in the dorm where they may either sit on their beds or stand. The toilets, urinals, and sinks are in the open area of the dorm and since one toilet does not work and since the urinals leak, inmates must "smell the odors" while dining. On some occasions a trusty sprays bleach while the inmates are eating.

### c. Conditions of Confinement

From Monday through Friday, inmates are required to make their beds upon arising and

5

to "stay from under the covers from 8 a.m. to 5 p.m." According to the plaintiff, the temperature remains in the upper 40's in the dorm and inmates are not furnished additional clothing. These conditions have resulted in sinus infections and colds.

### *d. Law Library*

Plaintiff claims that the law library is "very inadequate with legal material or anyone that can help with legal matters..." The inmates who are in charge have no knowledge of or special training in law and the books that are available are out dated and torn. Further, inmates must stand while in the library because there are no tables and chairs. Plaintiff is allowed to visit the library from 8 a.m. – 11 a.m. on Tuesdays and must share the facility with 100 or so inmates.

### *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint was deemed insufficient. Plaintiff was instructed on the law and directed to amend his complaint to provide additional facts. Plaintiff amended his complaint, but, as was shown, his amended complaint did not cure the deficiencies previously noted. Nevertheless, accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed as frivolous and for failing to state a claim for which relief may be granted.

## 2. Medical Care

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed

under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing

that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Plaintiff has named only three defendants – (1) Madison Parish Sheriff Larry Cox, (2) MPCC's Warden Jimmy Shivers, and (3) Head Nurse Lydia Smith. The allegations contained in both the original and amended complaints fail to establish deliberate indifference on the part of any of these defendants. Plaintiff has not shown that Sheriff Cox, Warden Shivers or Nurse Smith, or anyone else "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (5th Cir.2001).

According to his amended complaint, plaintiff's dental problem began in June 2008 and was ultimately resolved by extraction in January 2009. During this 7 month period, plaintiff was provided pain medication on all but four occasions. He has not demonstrated deliberate indifference on the part of the named defendants or any others and therefore his medical care claim is frivolous.

### 3. Diet

The Constitution mandates that detainees and inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply

9

with the Constitution, inmates must receive 'reasonably adequate' food.").

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities...". Nor did he allege any specific physical harm resulting from the defendants' alleged dietary failures. He did not claim that he was at all undernourished, or that he lost weight or suffered any other adverse physical effects as a result of the complained of diet; nor did he intimate that he would suffer absent this court's intervention into the dietary operations of the prison. Plaintiff offered only a conclusory allegation that the prison diet was inappropriate and that is insufficient to state a claim for which relief might be granted.

Finally, with regard to the three defendants – Sheriff Cox, Warden Shivers, and Nurse Smith – he has alleged no fault with respect to his dietary concerns, thus rendering this claim subject to dismissal as frivolous.

### *4. Conditions of Confinement*

Complaints about prison conditions are also analyzed under the Eighth Amendment's proscription of cruel and unusual punishment. The Eighth Amendment does not prohibit punishment; however, it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable

prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

As shown above, Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "<u>so serious as to deprive prisoners of the minimal measure of life's necessities</u>," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with <u>deliberate indifference to the prisoner's conditions of confinement</u>. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture – the infliction of pain without penological purpose – such conditions may be considered as cruel and unusual punishment under the Eighth Amendment. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

The conditions alleged in plaintiff's complaint simply do not rise to the level of Eighth Amendment violations. Plaintiff complained that he is forced to eat in his dorm room where he

is required to either sit upon his bed or stand and where he is exposed to odors from the communal toilets and urinals; and, he complained that his dorm room is cold and he is not permitted additional clothing. Such claims, standing alone, simply do not rise to the level of cruel and unusual punishment as defined by the jurisprudence, because, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis* ³ harm or injury as a result to his exposure to the complained of conditions. The only complaint of injury was a conclusory claim that he sustained colds and sinus problems as a result of being exposed to cold conditions in the dormitory. Plaintiff's claim that the temperature in the dorm is "in the upper 40's..." seems implausible. Federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However, even if accepted as true, he has alleged no more than a *de minimis* injury resulting from his exposure to this condition.

In order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004). Plaintiff, at worst, was inconvenienced and not injured or

---

³ It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence, "... is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual punishment" since the deprivations alleged were not so extreme as to "...rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025.  The injuries sustained are all *de minimis*, at worst. Plaintiff's Eighth Amendment conditions of confinement claims are  frivolous.

## 5. Law Library

Finally, plaintiff complains of deficiencies in the prison law library. and thus implies that he has been denied his right of access to the Courts. In so doing he makes the following specific claims: (1) the law library lacks trained staff; (2) the law library lacks appropriate law books; (3) inmates are given inadequate time in the law library; and (4) are denied tables and chairs.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821;  *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Plaintiff has not shown how his ability to prepare and transmit

legal documents has in any way been inhibited by the alleged inadequacies of the prison law library.

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff was specifically advised that he must show prejudice in order to succeed on his law library claim. He has not done so and this failure is fatal to his claim.

### *Conclusion and Recommendation*

In short, plaintiff's claims are frivolous or fail to state a claim for which relief may be granted and dismissal on that basis is recommended. Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in

accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 3, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE